UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW J. GURWIN,

    Plaintiff(s),

v.

UBS FINANCIAL SERVICES, INC.,

    Defendant(s).
_____/

Case No. 07-10323

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38]**

Plaintiff Matthew J. Gurwin filed this action alleging the following claims under Michigan law: tortious interference with a business relationship, defamation, and violation of the Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws § 423.501, *et seq*.[1] Defendant asserts that Plaintiff has produced no admissible evidence to support any of his claims and that, in any event, Plaintiff is estopped from bringing this action due to his alleged attempt to hide the existence of this action from his bankruptcy creditors. This matter comes before the Court on Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion is GRANTED.

**I. Facts**

Plaintiff was employed by Defendant from September 2004 until March 3, 2006. (Def.'s Mot. at 3; Pl.'s Resp. at 2.) Plaintiff's compensation was purely commission-based.

---

[1] Plaintiff's complaint also included claims for invasion of privacy, intentional infliction of emotional distress, violation of the Michigan Consumer Protection Act, and damages claims for emotional distress, humiliation, and mental anguish. The parties stipulated to dismiss these claims. (Docket Text # 43.)

(Pl.'s Resp. at 2.) In addition, Plaintiff received an Employee Forgivable Loan in the amount of $170,035 at the beginning of his employment. (Def.'s Mot. at 3; Pl.'s Resp. at 2.) On March 3, 2006, Plaintiff tendered his resignation to the Branch Manager, Alvin Spencer. (Pl.'s Resp. at 2.) Mr. Spencer allegedly responded by telling Plaintiff, "If you are going to work for Gary Ran,[2] I'm going to get you and I am going to ruin you and everything will come back to get you; this is a small town." (Pl.'s Resp. at 2-3.) On March 14, 2006, Plaintiff repaid in full the Employee Forgivable Loan. (Def.'s Mot. at 3; Pl.'s Resp. at 3.)

In early 2006, Plaintiff sought to refinance the mortgage on a home he recently purchased. (*Id.*) Plaintiff sought a 100% cash out loan in the amount of $595,000 without having to provide any documentation of his income. (Gurwin Dep., Def.'s Mot., Ex. B at 66.) Plaintiff worked with Mary Reid, a loan officer with Paramount Bank, to secure the financing. (Pl.'s Resp. at 3.) Although Paramount Bank would not approve such a loan, Ms. Reid found a lender who would: American Brokers Conduit ("ABC"). (Def.'s Mot. at 3; Pl.'s Resp. at 4.)[3] On June 13, 2006, ABC sent Plaintiff a "Notice of Loan Approval" that was conditioned on a number of terms, including a verbal verification of employment to verify "a 2 year history of employment earning commissions as a Financial Advisor." (Pl.'s Resp., Ex. F.) The Loan Approval also contained the following provision:

> This approval/commitment may be withdrawn or revoked at any time, including but not limited to, any of the following reasons: . . . 2) there is a change in the facts stated in the mortgage application, the documents in support thereof, or the credit report; . . . 4) any material representation in the

---

[2]Gary Ran is a founding member of the firm that Plaintiff joined after submitting his resignation to Defendant. (Pl.'s Resp. at 3 n.2.)

[3]The loan was structured as two different loans totaling $595,000. One was in the amount of $416,500, and the other was for $178,500.

>loan application is incorrect; and 5) we are unable to verify or validate any information you provided in connection with your application.

(*Id.*)

On June 20, 2006, an ABC representative called Defendant to verify Plaintiff's prior employment and spoke with John Kulhavi, Defendant's Branch Operation Manager. (Def.'s Mot. at 4; Pl.'s Resp. at 4.) Plaintiff claims that Mr. Kulhavi told ABC that Plaintiff did not work on commission while employed by Defendant and that Plaintiff owed money based on the Employee Forgivable Loan. Mr. Kulhavi, on the other hand, asserts that he told ABC that he did not know how Plaintiff was paid and that he did not know whether Plaintiff owed any money to Defendant. (Def.'s Mot., Ex. E at ¶ 4.) At the time of the call, Mr. Kulhavi had been Operation Manager for one week, and it was not his duty to know how employees were paid or to know the status of an employee's repayment obligation. (*Id.* at ¶ 5.)

ABC ultimately denied Plaintiff's loan request. In its "Statement of Credit Denial," ABC listed the reasons it denied Plaintiff's request as follows: 1) Insufficient Credit File, and 2) "We do not grant credit to any applicant on the terms and conditions you have requested." (Def.'s Mot., Ex. F.) The Statement also explained, "Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below" - Equifax Information Service. (*Id.*) ABC could have, but did not, include the following reasons for denying Plaintiff's Request: Unable to Verify Employment, and "our credit decision was based in whole or in part on information obtained from . . . an outside source other than a consumer reporting agency." (*Id.*)

The Statement also said that, while ABC could not extend credit on the terms Plaintiff requested, it could offer Plaintiff "credit on the terms and conditions listed on the attached Commitment letter." (*Id.*) The terms of the letter, which both parties characterize as a counter-offer, required a "full doc loan" - i.e. Plaintiff would have to provide additional records to verify the information on his application. (Gurwin Dep., Def.'s Mot., Ex. B at 80.) Plaintiff rejected the counter-offer because he "didn't want to do a full doc loan" and because the proposed loan was "not as good."[4] (*Id.* at 80, 82.) Plaintiff also testified that he would rather incur greater costs with a different lender than provide the requested documentation to ABC. (*Id.* at 67-68.) Plaintiff ultimately obtained a "no doc" loan through Accredited Home Lenders ("AHL"). (*Id.* at 98; Pl.'s Resp. at 6.) The terms of the AHL loan were similar to the proposed loans from ABC, but carried a higher interest rate. (*Id.*)

On August 28, 2006, Plaintiff requested his personnel records from Defendant. (Def.'s Mot. at 6; Pl.'s Resp. at 7.) These records were kept at Defendant's home office in Weehawken, New Jersey. (Def.'s Mot. at 6.) Defendant responded to Plaintiff's request on November 7, 2006. (Def.'s Mot. at 6; Pl.'s Mot. at 7.) Defendant did not provide its Employee Handbook until July 31, 2007. (Pl.'s Resp., Ex. L.)

Plaintiff filed for Chapter 13 bankruptcy on November 28, 2006. (Def.'s Mot. at 6; Pl.'s Resp. at 7.) Plaintiff did not disclose the instant suit as an asset. (*Id.*) Plaintiff claims that

---

[4]Plaintiff's counsel, trying to explain why Plaintiff declined the counter-offer, states that "in Ms. Reid's words, there was nothing else she could do to remedy the situation for Plaintiff because ABC thought, due to Defendant's unlawful actions, that Plaintiff had lied." (Pl.'s Resp. at 5.) The Court is troubled by counsel's mischaracterization of Ms. Reid's statements. With respect to the counter-offer, Ms. Reid testified that "it didn't appear that [Plaintiff] would qualify under those circumstances." (Pl.'s Resp., Ex. E at 32.) Nowhere does Ms. Reid state that the loan was denied because ABC thought Plaintiff had lied.

4

this was an oversight, and he amended his bankruptcy disclosures to reflect this suit on May 25, 2007.

This matter is now before the Court on Defendant's motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

Plaintiff has presented three claims in this case: tortious interference with a business relationship, defamation, and violation of the Bullard-Plawecki Employee Right to Know Act. The Court will address each claim in turn; first, though, the Court must determine which evidence it may consider when addressing Defendant's motion.

### A. Hearsay

"[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (citation omitted). Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Ev. 801(c). Defendant contends that three statements relied upon by Plaintiff, each of which relates to comments allegedly made by Mr. Kulhavi, are hearsay and thus cannot be considered by the Court for purposes of this motion. The Court will address each statement in turn.

#### 1. ABC Employment Verification Sheet

Plaintiff seeks to introduce an ABC "Verbal Verification of Employment" sheet that contains the following notation: "did not rcv bonus/commission." (Def.'s Mot., Ex. L.) The purpose of this evidence is to establish that Mr. Kulhavi "den[ied] that Plaintiff had received commissions and, offer[ed] - without even being asked - that Plaintiff purportedly owed Defendant money." (Pl.'s Resp. at 11.) Plaintiff argues that such evidence is not hearsay because it is not offered to prove the *truth* of the matter asserted; rather, it is offered to prove the *falsity* of the matter asserted, and such a use does not fall within the definition of hearsay. *See United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986) ("statements offered to prove the falsity of the matter asserted are not hearsay").

6

The Court agrees with Plaintiff that the notation itself does not constitute hearsay. Although the Court rejects Plaintiff's argument that the notation is being offered to prove the falsity of the matter asserted, it also is not being offered to prove the truth of the matter asserted. Rather, the notation itself is being offered simply to prove that something was said, not that it was true. Accordingly, the notation itself is not hearsay.

The document that contains the notation, however, is hearsay, for Plaintiff seeks to use the document to establish the truth of the matter; namely, that the ABC employee who made the notation accurately recorded Mr. Kulhavi's words. Plaintiff may be able to show that the document falls under the business records exception to the hearsay rule. *See* Fed. R. Ev. 803(6). Because such a showing typically is not made until trial, it would be premature for the Court to discount the document as hearsay at this stage. The Court, then, will consider both the document and the notation for purposes of this motion.

### 2. Ms. Reid's Testimony

Plaintiff also seeks to use the testimony of Ms. Reid, the loan officer from Paramount Bank, to establish Mr. Kulhavi's alleged statements. Ms. Reid testified that she called ABC and spoke with an unidentified male who reported that he had heard that Plaintiff's loan was denied due to statements made by Mr. Kulhavi. (Def.'s Mot., Ex. C at 30-31.) This testimony constitutes double hearsay: the statement of the unidentified male, and the statement he "heard" regarding Plaintiff's loan. Unless "each part of the combined statements conforms with an exception to the hearsay rule," this testimony cannot be considered for purposes of this motion. Fed. R. Ev. 805.

Plaintiff has failed to establish that either level of hearsay conforms with an exception to the hearsay rule. Plaintiff argues that Ms. Reid's testimony is being offered not to prove

what Mr. Kulhavi said, but to show the effect of such statements on the listener, which is a non-hearsay use. Plaintiff frames the issue based on its alleged effect on ABC, but proceeds to discuss the effect on Ms. Reid. As Plaintiff has presented no evidence of the alleged statements' effect on ABC (but only Ms. Reid's opinion of that effect), the Court will address only whether the alleged statements are admissible to show the effect they had on Ms. Reid herself.

Plaintiff argues that after Ms. Reid learned of Mr. Kulhavi's alleged statements, she "thought the damage was done, and no further actions by Plaintiff would be able to achieve a loan through ABC despite ABC's issuance of a counteroffer because ABC thought that Plaintiff had lied in his application as to commission payment structure with Defendant." (Pl.'s Resp. at 15.) As the Court discussed earlier, Ms. Reid never made such a statement, despite Plaintiff's counsel's repeated assertions that she did. Because Plaintiff has not established any effect that Mr. Kulhavi's alleged statements may have had on Ms. Reid, the statements are not admissible for that purpose. Ms. Reid's testimony regarding Mr. Kulhavi's alleged statements, therefore, constitutes hearsay and cannot be considered for purposes of this motion.

### 3. Plaintiff's Testimony

Plaintiff also seeks to use his own deposition testimony to establish Mr. Kulhavi's alleged statements. Plaintiff testified that Ms. Reid told him that "when ABC called to verify employment at UBS, they told them that I was not paid on commission." (Gurwin Dep., Def.'s Mot., Ex. B at 76.) Plaintiff also testified that Ms. Reid told him that Defendant "screwed up your loan and lied about your commission schedule." (*Id.* at 26.) Ms. Reid also allegedly told Plaintiff that "the damage was done" and that ABC "would not offer

8

[Plaintiff] another loan" because "they think that [he was] lying." (*Id.* at 95, 121.) Plaintiff admitted that he never spoke to anyone at ABC about his loan and that the only person he spoke with at Paramount Bank was Ms. Reid. (*Id.* at 89). He also stated that he was "relying solely upon Mary Reid's representations to [him] for [his] conclusion that [he] was denied loans by ABC in 2006 due to statements made by John Kulhavi." (*Id.* at 88.)

These statements allegedly made to Plaintiff by Ms. Reid regarding his loan denial constitute hearsay and do not fall under any hearsay exception. Accordingly, Plaintiff's testimony in this regard will not be considered by the Court.

### B. Tortious Interference with a Business Relationship

Plaintiff's first claim against Defendant is for tortious interference with a business relationship. To establish a prima facie case, Plaintiff must prove the following elements:

1) the existence of a valid business relationship or expectancy,

2) knowledge of the relationship or expectancy on the part of the defendant,

3) an intentional and improper interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and

4) resultant damage to the plaintiff.

*Mino v. Clio School Dist.*, 661 N.W.2d 586, 597 (Mich. App. 2003). Interference is improper if it is "illegal, unethical, or fraudulent." *Weitting v. McFeeters*, 304 N.W.2d 525, 530 (Mich. App. 1981).

Defendant challenges Plaintiff's ability to make the required showing for the third element of a prima facie case. The Court agrees. Even assuming that the ABC Verification Sheet shows that Mr. Kulhavi made the alleged statements, and that the statements were "improper," Plaintiff has presented no evidence to establish that the

9

statements caused the termination of the relationship. ABC's stated reasons for denying Plaintiff's loan were Plaintiff's insufficient credit file and the terms requested by Plaintiff (which ABC stated it did not grant to any applicant). Moreover, ABC stated that its decision was based in whole or in part on information it received from a consumer reporting agency. Furthermore, the loan approval was contingent upon verification of Plaintiff's two year contingent-based employment as a financial advisor, yet Plaintiff worked for Defendant for a period of only eighteen months. Finally, ABC could have stated the reason for denial as "unable to verify employment" or as "based on information from an outside source" - ABC did not select these options. Based on this evidence, which Plaintiff has not rebutted, no reasonable juror could conclude that Plaintiff's loan was denied due to Mr. Kulhavi's alleged statements.[5]

Plaintiff has failed to present evidence to establish that Defendant's alleged interference with a business relationship caused the termination of that relationship. As a result, Plaintiff cannot establish a prima facie case of tortious interference, and Defendant's motion with respect to this claim is GRANTED.

**C. Defamation**

Plaintiff's second claim is for defamation, which requires proof of:

  1) a false and defamatory statement concerning the plaintiff,

  2) an unprivileged communication to a third party,

---

[5]Plaintiff, in an effort to establish Mr. Kulhavi's "motive" to make the alleged statements, states that Mr. Kulhavi received a $25,000 raise the same month that he supposedly spoke to ABC. Mr. Kulhavi's raise, however, was as a result of his promotion to Branch Operations Manager, which occurred over a week *before* the phone call from ABC. (Def.'s Mot., Ex. E at ¶ 9.)

3) fault amounting at least to negligence on the part of the publisher, and

4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 211 (Mich. 1992).

Mr. Kulhavi's alleged statement does not constitute defamation per se. *See Burden v. Elias Brothers Big Boy Rests.*, 613 N.W.2d 378, 382 (Mich. App. 2000) (defamation per se is limited to words that impute a lack of chastity or the commission of a crime). Plaintiff therefore most show the existence of harm *caused* by publication. Plaintiff is unable to make this showing. As discussed above, Plaintiff has not presented evidence to establish that Mr. Kulhavi's alleged statement caused his loan to be denied. Thus, even assuming that Mr. Kulhavi made a false and defamatory statement to ABC, Plaintiff's defamation claim must fail. Defendant's motion is therefore GRANTED as it relates to Plaintiff's claim for defamation.

### D. Bullard-Plawecki Act

Plaintiff's final claim is that Defendant violated the Bullard-Plawecki Employee Right to Know Act ("BPA"), Mich. Comp. Laws § 423.501, *et seq.* The BPA provides that "an employee may obtain a copy of the information or part of the information contained in the employee's personnel record." Mich. Comp. Laws § 423.504. Here, Plaintiff objects to the 73 days it took Defendant to provide Plaintiff's personnel record and claims that

Defendant's initial response was incomplete and was not remedied for another eight months.

The BPA "does not contain any specific time requirement for production of a copy of an employee's employment record." *Scuderi v. Monumental Life Ins. Co.*, 344 F. Supp. 2d 584, 603 (E.D. Mich. 2004) (Rosen, J.). As a result, the court in *Scuderi* concluded that a three month delay in the production of an employee's file was not a violation of the BPA. (*Id.* at 604.) Plaintiff argues that *Scuderi* is distinguishable in two respects. First, Plaintiff argues that, unlike the defendant in *Scuderi*, Defendant here "did not provide its response to the Bullard-Plawecki request within a month of filing suit." (Pl.'s Resp. at 17.) In *Scuderi*, the plaintiff filed suit on August 25 and received her personnel file on September 26, a delay of 31 days. *Scuderi*, 344 F. Supp. 2d at 603. Here, Plaintiff filed suit on September 27 and received his personnel file on November 7, a delay of 41 days. This is a distinction without a difference. To start, given that the BPA does not set forth any time requirement, 10 days does not delineate the difference between an acceptable and unacceptable delay. Further, Plaintiff testified that he could not recall if he looked at the file upon receipt, and he could not identify anything in the file that he needed during the delay.[6] (Gurwin Dep., Def.'s Mot., Ex. B at 65, 104-05.)

Plaintiff also seeks to distinguish *Scuderi* on the ground that, here, Defendant did not fully comply with Plaintiff's request until "almost a year later." (Pl.'s Resp. at 17.) Plaintiff's complaint in this regard centers on the fact that he was not provided a printed copy of

---

[6]Because Plaintiff has not established a willful and knowing violation of the BPA by Defendant, he is entitled only to actual damages plus costs. Mich. Comp. Laws § 423.511. Based on Plaintiff's testimony, he does not appear to have suffered any actual damages.

12

Defendant's Employee Handbook until July 31, 2007; the initial request was made August 28, 2006. The Employee Handbook, however, does not fall within the BPA's definition of a "personnel record." *See* Mich. Comp. Laws § 423.501(2)(c) (describing a "personnel record" as information specific to the employee). Rather, the Employee Handbook is directed to all of Defendant's employees. (*See* Pl.'s Resp., Ex. L.) Because the Employee Handbook is not part of Plaintiff's personnel record, Defendant's delay in producing it did not violate the BPA.

Plaintiff is unable to distinguish *Scuderi* in a meaningful way, and the Court concludes that Defendant's delay in producing Plaintiff's personnel file did not violate the BPA. As a result, Defendant's motion as to Plaintiff's BPA claim is GRANTED.

**E. Judicial Estoppel**

Defendant also argues that Plaintiff's claims should be barred on the basis of judicial estoppel. The Court will not address this argument as it already has granted Defendant's motion as to each of Plaintiff's claims.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 4, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 4, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

13